**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| DR. LILY F. TERCERO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO.  1:16-CV-282 |
| | ) | |
| TEXAS SOUTHMOST COLLEGE DISTRICT | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ADELA G. GARZA, JUAN MENDEZ III, | ) | |
| RUBEN HERRERA, RAMON CHAMPION | ) | |
| HINOJOSA, AND DR. ANTONIO | ) | |
| ZAVALETA, | ) | |
| *in their official capacities as Trustees of the* | ) | |
| *Texas Southmost College District and in their* | ) | |
| *personal capacities,* | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff, Dr. Lily F. Tercero ("Dr. Tercero"), for her causes of action against Defendants,

pleads as follows:

**INTRODUCTION**

1.      Dr. Tercero was employed as the President of Texas Southmost College District

(the "District") from October 1, 2011 through September 19, 2016.  She received a three-year

term contract which was evaluated annually and renewed at the end of each year for an

additional three-year term through May 1, 2019.  On September 19, 2016, Dr. Tercero was

terminated without good cause and in violation of her right to due process.  Upon information

and belief, the termination was orchestrated by Defendant Adela G. Garza, the Board Chair, and

the other individual Defendants because Dr. Tercero would not take "orders" from individual

board members when the directives were not approved by at least four members of the board at a lawful meeting.  Also, the Defendants were upset that the District's windstorm insurance policy was renewed with an agent that was not of their choosing---they wanted to steer the business to a local agent with whom they had a relationship.[1]

## PARTIES

2.      Prior to September 19, 2016, Dr. Tercero served as President of Texas Southmost College ("the College").

3.      Defendant Texas Southmost College District ("the District") is a public junior college district created by Texas law and vested with governing authority over the College.

4.      Defendant Adela G. Garza is Chair of the District's Board of Trustees (the "Board").

5.      Defendant Juan "Trey" Mendez III is an attorney by training and Vice Chair of the District Board.

6.      Defendant Ruben Herrera is an attorney by training and a member of the District Board.

7.      Defendant Ramon Champion Hinojosa is a member of the District Board.

8.      Defendant Dr. Antonio "Tony" Zavaleta is a member of the District Board.

9.      Defendants Garza, Mendez, Herrera, Hinojosa, and Zavaleta are referred to collectively herein as the "Individual Defendants."

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over Dr. Tercero's claims under 42 U.S.C. § 1983 pursuant to federal question jurisdiction set forth in 28 U.S.C. § 1331.

---

[1] The premium for windstorm insurance coverage is regulated, so the amount of the premium to be paid by the District would not have changed.  Upon information and belief, certain Board members wanted to steer the business to an agent with whom they had a relationship as a *quid pro quo*.

11.     This Court has subject matter jurisdiction over Dr. Tercero's state law claims pursuant to supplemental jurisdiction set forth in 28 U.S.C. § 1367 insofar as those claims are related to and arise from the same case and controversy as her claims under 42 U.S.C. § 1983.

12.     Because the District is an independent political subdivision under Texas statutory and common law, the Eleventh Amendment does not constitute a bar to jurisdiction.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this district and because at least one Defendant resides in this district and all Defendants are residents of Texas.

14.     Personal jurisdiction is proper because all Defendants reside in this district and are, therefore, subject to general jurisdiction.

## GENERAL ALLEGATIONS

### *Dr. Tercero's Employment Contract*

15.     On May 3, 2016, Dr. Tercero and the District entered into a new, three (3) year written employment contract titled "Employment Agreement:  Dr. Lily F. Tercero—President of Texas Southmost College District"—through which the District employed Dr. Tercero as its President.

16.     The employment contract was approved by the Board and executed by its then chairperson Francisco G. Rendon.

17.     Among other terms, the employment contract specified that Dr. Tercero would serve as President of the District and receive an annual base salary of no less than $228,228.00, benefits offered to other College employees consistent with District policy, and certain specified vacation, sick leave, and retirement benefits.

18.     The employment contract had a term of thirty-six months, expiring May 1, 2019.

19.     The employment contract incorporated the District's policies in the Board Policy Manual, including those policies pertaining to the termination of the President.

20.     The employment contract specified that Dr. Tercero was to perform assigned "duties and responsibilities as prescribed by the Board," and to follow those "rules and procedures enacted or authorized by the Board as may be adopted and amended from time to time."  In the past, the District Board of Trustees had assigned Dr. Tercero responsibilities and set specific goals against which her performance was annually evaluated.  The Board which terminated Dr. Tercero failed to assign any responsibilities, establish any goals, and never evaluated her performance.

21.     The employment contract did not require Dr. Tercero to follow the instructions of individual Board members because such a provision would have violated Texas law vesting governing authority for the District in the Board as an entity, rather than in individual persons.

22.     The employment contract specified that, should the Board terminate Dr. Tercero's employment without good cause, Dr. Tercero would be "paid on a monthly basis as all other employees until the expiration of this agreement."  During the term of her employment, Dr. Tercero's performance was exemplary, as evidenced by the statement of former Board member Ed Rivera attached hereto as Exhibit "A".

### *Individual Board Members Attempt To Issue Illegal Directives To Dr. Tercero*

23.     After the College renewed the windstorm insurance with an agent that was not the person Defendant Garza and other Individual Defendants desired, Defendant Garza and other Defendant Board members made unreasonable and unlawful demands on Dr. Tercero. By way of example only:

- On June 28, 2016, Defendant Garza repeatedly demanded Dr. Tercero's calendar for the next two months;

- On July 6, 2016, Defendant Zavaleta requested the following information, which Defendant Garza directed should be produced the following week:

    o the complete TSC budget line by line also arranged in a standard format which shows last year's budget and this year's budget;

    o the complete list of all TSC employees from top to bottom including salary;

    o a "contemporary" organizational chart showing position, title, and the name of the place holder;

    o a complete list of all academic programs and their courses;

    o a complete list of full time faculty and staff by department;

    o the most recent TSC audit;

    o the President's contract;

    o all operating contracts currently in effect;

    o a complete list of courses offered in the Spring semester 2016 with official enrollment;

    o a complete list of courses proposed for the Fall semester 2016;

    o any contract or MOU which operates the school's Dual Enrollment program with the 3 school districts in the TSC district and any other such as San Benito;

    o any operational contract or MOU for the operation of the Early College High School;

    o a complete list of all programs operating at the International Technology and Education Center ("ITEC"); and

    o the most recent copy of the LBB request for the current operating year as well as formula funding for Semester Credit Hours and Contact Hours.

24.     The requests are unreasonable given their breadth, scope, and the limited time allowed for compliance. The requests are illegal because they were not approved by at least four members of the Board after being deliberated in open session as required by Texas law.

25.     On or about July 13, 2016, Defendant Herrera by email demanded all checks over $10,000.00 be forwarded to him with backup documentation so that he could sign with a true signature rather than a stamp; this was a dramatic change in college procedure and not prescribed in the College Policy.  Defendants Garza, Mendez, and Zavaleta were included on the email. Herrera understood how disruptive it would be for Dr. Tercero to have to produce the backup for each check and to have Defendant Herrera sign checks in person.  His intention was to make life difficult for Dr. Tercero.  Tony Zavaleta cheered him on in a follow-up email "Very Good!" Defendant Mendez, acknowledging that the Board should not be making decisions in private (in violation of the Open Meetings Act) responded "we should not [have] more than 3 members on an email regarding board stuff."  The campaign to oust Dr. Tercero continued in private.

26.     The demands on Dr. Tercero by Defendant Garza and the other defendants became so outrageous that Board member Dr. Reynaldo Garcia chastised Defendant Garza's behavior in writing:

> Adela, your behavior is reason for great concern for the board.  You have become a loose cannon.  … Your behavior seems to indicate a lack of self-esteem and insecurity.  Remember, you are just one of seven board members. We are all equal.  Being Chair simply means you preside over board meetings and help set up the agendas with the President [Dr. Tercero].  It also gives you a gavel and not a whip to crack.

> One final note, Dr. Tercero is not your personal slave. …Adela, tone it down and stop your harassment for the sake of our community college.

A true and correct copy of the memorandum is attached hereto as Exhibit "B".

### *The District Provides Inadequate Notice Of The Grounds For Termination*

27.     On or about August 3, 2016, the District provided Dr. Tercero a "Notice of Proposed Action of Dismissal; and Notice of Suspension with Pay Pending the Outcome of the Dismissal Hearing" (the "Notice").  The Notice failed to give fair notice of the factual basis for Dr. Tercero's proposed dismissal and termination.  By way of example only, the Notice stated that Dr. Tercero refused "to carry out reasonable directives of the employee's supervisor", but failed to identify the supervisor, the specific directive, or the date the directive was given to Dr. Tercero.  Upon information and belief, the "reasonable directives" were the unreasonable and illegal requests set forth above.

### *The District Refuses To Provide Documents To Dr. Tercero*

28.     On or about August 12, 2016, Dr. Tercero made a written demand for a public evidentiary hearing and requested various documents necessary for her to present an informed defense. A true and correct copy of the August 12, 2016 letter is attached hereto as Exhibit "C". In response, the District withheld relevant documents and failed to provide nearly all of the documents requested.

29.     On or about August 22, 2016, Mike Shannon, the interim President of the College, announced to the faculty and staff that the search for a new president was about to begin.  The fact that the search process timeline had already been created is evidence that, as a practical matter, the decision to terminate Dr. Tercero's employment had already been made.

### *The District Provides An Inadequate And Deficient Termination Hearing*

30.     The District conducted a public termination hearing on September 19, 2016. When Dr. Tercero arrived at the hearing, her office had already been emptied, evidencing that the decision to terminate her was made before the hearing began and before any evidence was presented.

31.     Over Dr. Tercero's objection, the District refused to allow Board Members who were fact witnesses (like Defendants Adela Garza, Trey Mendez, Ruben Herrera, and Tony Zavaleta) to be called to testify.  In addition, the District refused to have the fact witnesses (Defendants Garza, Mendez, Herrera, and Zavaleta) recuse themselves.  Furthermore the District failed to call any witnesses. Instead, the District presented only the argument of its counsel (based entirely on hearsay) and artificially limited the time of the hearing to three (3) hours when much more time would have been needed to provide a full and complete defense, including calling fact witnesses.

32.     In addition, the District failed to advise the Board or Dr. Tercero what standard of proof (e.g., preponderance of the evidence) would apply.

33.     In short, the public hearing was a farce.  The outcome was predetermined and was not based on the "evidence" presented.

### *The Board Terminates Dr. Tercero's Employment After An Illegal Closed Session*

34.     Before the conclusion of the public hearing the Board retired into a closed session to deliberate.  Dr. Tercero objected to the closed deliberation and demanded that the deliberation take place in public.  Her objection was ignored.

## COUNT I

### Deprivation of Procedural Due Process
### (42 U.S.C. § 1983; against all Defendants, in all capacities)

35.     Dr. Tercero incorporates by reference the allegations in paragraphs 1 through 34 of the Complaint as if fully set forth herein.

36.     Dr. Tercero had a constitutionally-protected property interest in her contractual employment with the District.

37.     Defendants deprived Dr. Tercero of her property interest by terminating her employment—purportedly for "good cause"—without providing adequate notice and an adequate hearing, in violation of the Due Process Clause of the Fourteenth Amendment.

38.     The notice and procedures Defendants provided Dr. Tercero were so deficient as to deprive her of any meaningful opportunity to respond and contest the charges against her and to have the evidence considered fairly and objectively.

39.     Among other deficiencies, the process afforded to Dr. Tercero was inadequate and failed to constitute "due process" under the Constitution because:

a.  The notice of bases for termination Defendants provided Dr. Tercero was so general and vague as to be useless.  Dr. Tercero's termination hearing thus amounted to a trial by ambush with Dr. Tercero having been deprived of any effective and meaningful opportunity to prepare and respond.

b.  Prior to the termination hearing, the Defendants refused to produce relevant documents to Dr. Tercero that she needed to prepare and present her case despite that Texas law required such documents to be made available to Dr. Tercero.

c.  Defendants set an arbitrarily short time limit for the hearing that precluded Dr. Tercero from introducing evidence to counter the case presented against her.

d.  Several of the Defendants were material witnesses to the alleged factual transactions that gave rise to the bases for termination articulated by Defendants, yet these Defendants who were witnesses refused to recuse themselves from the termination hearing despite their clear conflict of interest.

e.   On information and belief, each of the individual Defendants entered the termination hearing having already determined to terminate Dr. Tercero regardless of what evidence was or was not presented.

f.   Defendants refused to identify what standard of proof would apply at the hearing and, in fact, conducted the hearing and deliberations without any standard of proof at all.

g.   Defendants failed to call any witnesses to substantiate the charges against Dr. Tercero and instead had their counsel articulate the "evidence" against Dr. Tercero by offering hearsay and double hearsay.

h.   Defendants deprived Dr. Tercero of the right to confront and cross-examine witnesses by having their counsel provide hearsay and double hearsay testimony.

i.   Before the close of the termination hearing, the Individual Defendants entered into a closed session in violation of the Texas Open Meetings Act and District policies, which required the deliberations to be conducted in open session.

40.   As a result of the inadequate notice and hearing procedures, Defendants proceeded to terminate Dr. Tercero's employment for purported "good cause," whereas they otherwise would have been required to terminate her employment "without cause," which would have required the District to pay Dr. Tercero the balance of her salary and benefits remaining under her employment contract.

41.   The District and the Individual Defendants were aware, prior to the hearing and their termination decision, that the notice and hearing procedures they employed were constitutionally deficient because they were advised as such by Dr. Tercero's attorney and, on

information and belief, those Individual Defendants who are attorneys were aware of this fact through their training and experience.

42.     Dr. Tercero's right to adequate notice and a meaningful opportunity to be heard were clearly established at the time she was deprived of due process; a reasonable official in the Individual Defendants' position would have known the notice and hearing procedures failed to satisfy minimum due process and violated Dr. Tercero's constitutional rights.

43.     In depriving Dr. Tercero of adequate procedural due process, Defendants acted under color of state law and in their respective capacities as a political subdivision and members of the Board.

44.     As a direct and proximate result of Defendants' failure to provide adequate procedural due process, Dr. Tercero incurred damages, including but not limited to, the loss of salary, lost employee benefits, diminished earnings capacity, lost career and business opportunities, litigation expenses, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages.

45.     Defendants' deprivation of Dr. Tercero's property interest without adequate due process was reckless and callous to Dr. Tercero's constitutional rights and, in the case of the Individual Defendants, was motivated by evil motive and/or malicious intent insofar as they wished to punish Dr. Tercero, deprive her of a fair hearing, and terminate her employment due to her refusal to follow their illegal directives.

## COUNT II

### Violation of Substantive Due Process
### (42 U.S.C. § 1983; against all Defendants, in all capacities)

46.     Dr. Tercero incorporates by reference the allegations in paragraphs 1 through 45 of the Complaint as if fully set forth herein.

47.     Under the Due Process Clause of the Fourteenth Amendment, Dr. Tercero has the right to be free from arbitrary and capricious action and from governmental action not substantially related to a legitimate governmental interest.

48.     Under Texas law, the Board, as an entity, is vested with authority to manage the affairs of the District.

49.     Texas law requires the Board to act as an entity pursuant to normal rules of order, including rules governing a quorum and majority voting.  Those rules of order are specified in the District's policies.

50.     The Board may only act at a meeting convened consistent with the Texas Open Meetings Act.

51.     Pursuant to its authority, the Board contracted with Dr. Tercero to serve as President of the District.  The Employment Agreement specified that Dr. Tercero would take direction from the Board and perform duties assigned by the Board.

52.     Contrary to Texas law and the terms of Dr. Tercero's contract, certain of the Individual Defendants personally gave orders and directions to Dr. Tercero.  These orders and directions, given by Individual Defendants, were not approved by majority vote of the Board.

53.     Under Texas law, no Individual Board Member had authority to direct Dr. Tercero or to manage the affairs of the District.  In fact, Texas law precludes any Individual Board Member from purporting to act on behalf of the Board and from attempting to exercise the authority of the Board where the Board has not acted formally.

54.     Consistent with Texas law and the District's own policies, Dr. Tercero resisted the orders given by one or more of the Individual Defendants as such orders were illegal under Texas law and inconsistent with District policy and Board by-laws.

55.     The Individual Defendants then caused Dr. Tercero to be noticed for termination and voted to terminate her employment because she refused to follow their illegal directives.

56.     The District had no legitimate interest in the illegal directives of Individual Defendants being followed.  To the contrary, the District had a legitimate interest only in the Board acting as an entity consistent with Texas law and District policy.

57.     Dr. Tercero's termination was not substantially related to any legitimate governmental interest and was arbitrary and capricious.

58.     Dr. Tercero's right not to be terminated based on her refusal to accede to illegal directives of the Individual Defendants was clearly established at the time Defendants noticed her for termination and terminated her; a reasonable official in the Individual Defendants' position would have known it is not a legitimate governmental interest to terminate an employee based on the employee's refusal to follow illegal directives.

59.     In depriving Dr. Tercero of substantive due process, Defendants acted under color of state law and in their respective capacities as a political subdivision and members of the Board.

60.     As a direct and proximate result of Defendants' arbitrary, capricious, and illegitimate termination of Dr. Tercero's employment, Dr. Tercero incurred damages, including but not limited to, the loss of salary, lost employee benefits, diminished earnings capacity, lost career and business opportunities, litigation expenses, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages.

61.     Defendants' arbitrary, capricious, and illegitimate termination of Dr. Tercero's employment was motivated by evil motive and/or malicious intent insofar as they wished to

punish Dr. Tercero due to her refusal to follow the illegal directives of the Individual Defendants.

## COUNT III

### Breach of Contract (against the District)

62.     Dr. Tercero incorporates by reference the allegations in paragraphs 1 through 61 of the Complaint as if fully set forth herein.

63.     The District is a local governmental entity for purposes of Texas Local Government Code § 271.152.

64.     Texas law authorized the District to enter into an employment contract with Dr. Tercero.

65.     Dr. Tercero and the District entered into a written employment contract whereby Dr. Tercero was employed to perform services as President of the District.

66.     The employment contract stated the essential terms of the employment relationship between Dr. Tercero and the District.

67.     The contract was supported by mutual consideration.

68.     The contract incorporated the District's policies, including policy BFC (LEGAL) governing termination of employment of the President.

69.     The District breached the contract by:

    a.   Terminating Dr. Tercero without good cause prior to completion of the fixed term of the written agreement without paying her the balance of her salary and benefits;

    b.   Conducting a portion of the termination hearing in closed session despite Dr. Tercero's explicit request for an open session, contrary to BFC (LEGAL);

c.   Failing to call witnesses with personal knowledge and instead presenting hearsay testimony through counsel, thus depriving Dr. Tercero of her contractual right to "cross-examine all adverse witnesses" as specified in BFC (LEGAL);

d.   Refusing Dr. Tercero's request to call as witnesses Board members who had personal knowledge of the transactions that gave rise to the charges against Dr. Tercero, thus depriving Dr. Tercero of her contractual right to "present evidence of innocence or extenuating circumstances" as specified in BFC (LEGAL); and

e.   Upon information and belief, predicating their decision to terminate Dr. Tercero's employment on information gained from the Individual Defendants' personal interactions with Dr. Tercero, which they did not testify to at the hearing, and thereby violated Dr. Tercero's contractual right to have the existence of "good cause" determined "solely on the evidence presented in the hearing" as specified in BFC (LEGAL).

70.   Dr. Tercero fully performed her obligations under the contract.

71.   As a direct and proximate result of the District's breach of contract, Dr. Tercero incurred direct damages including but not limited to, the loss of salary and lost employment benefits due her under the contract, together with reasonable attorney fees and interest as allowed by law.

## COUNT IV

### Violation of Texas Open Meetings Act
### (against the District and Individual Defendants in their official capacities)

72.     Dr. Tercero incorporates by reference the allegations in paragraphs 1 through 71 of the Complaint as if fully set forth herein.

73.     The District is a governmental body for purposes of the Texas Open Meetings Act, Texas Government Code § 551.001 *et seq*.

74.     Pursuant to the Texas Open Meetings Act, the meetings of the Board are to be held in open session unless a specific provision of the Act allows the meetings to be closed.

75.     Prior to the date of her termination hearing, Dr. Tercero provided written notice to the Board of her election that the termination hearing would be held in open session.

76.     Despite Dr. Tercero's written request, the Board commenced the termination hearing in open session but then went into closed session for the purpose of deliberating over its decision.

77.     The Board cited as authority to enter into closed session Texas Government Code § 551.074; however, that provision of the Texas Open Meetings Act specifically does not apply if "the officer or employee who is the subject of the deliberation or hearing requests a public hearing."

78.     Because Dr. Tercero requested a public hearing, the Board lacked authority to enter into closed session and violated the Texas Open Meetings Act.

79.     The Board's decision to close the deliberations lacked any reasonable basis in law.

80.     Dr. Tercero is an interested person in the Board's illegal decision to conduct the deliberations in closed session because she was the subject of the deliberations.

81.     As an interested person, Texas Government Code § 551.142 entitles Dr. Tercero to an order in mandamus directing the Board to reverse the closure of its deliberations and make public any transcript or recording made of those deliberations and to recover her reasonable costs of litigation and reasonable attorney fees.

82.     In the alternative to the recovery of money damages for the balance of salary and benefits due under her contract, because the Board conducted its deliberations and voted to terminate Dr. Tercero in an illegal closed session, the decision should be voided and Dr. Tercero reinstated pursuant to Texas Government Code § 551.141.

## PRAYER FOR RELIEF

WHEREFORE, Dr. Tercero requests judgment against all Defendants as follows:

1.     For appropriate declaratory relief regarding the unlawful and unconstitutional acts and practices of Defendants;

2.     For appropriate compensatory damages in an amount to be determined at trial;

3.     For punitive damages in an amount to be determined at trial;

4.     For appropriate equitable relief against all Defendants as allowed by law, including the enjoining and permanent restraining of these violations and direction to Defendants to take such affirmative action as is necessary to ensure that the effects of the unconstitutional and unlawful conduct be eliminated and do not continue to effect Dr. Tercero and others;

5.     An order in mandamus directing Defendants to open their illegally closed deliberations;

6.     For an award of reasonable attorney fees and costs on Dr. Tercero's behalf under 42 U.S.C. § 1988 and Texas law; and

7.     For such other and further relief to which Dr. Tercero may show herself justly entitled.

## JURY DEMAND

Dr. Tercero hereby demands and requests trial by jury of all issues raised that are triable by jury.

Respectfully submitted,

By:    */s/ Richard A. Illmer*
        Richard A. Illmer
        State Bar No. 10388350
        Rick.Illmer@HuschBlackwell.com

**HUSCH BLACKWELL L.L.P.**
2001 Ross Avenue, Suite 2000
Dallas, Texas  75201
(214) 999-6100
(214) 999-6170 *facsimile*

**ATTORNEYS FOR PLAINTIFF**