United States District Court
Southern District of Texas
**ENTERED**
July 25, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LILY F. TERCERO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 1:16-CV-00282 |
| | § | |
| TEXAS SOUTHMOST COLLEGE DISTRICT, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

### <u>ORDER</u>

Pending before the Court is Texas Southmost College District's Motion to Dismiss, Renewed Motion for Judgment as a Matter of Law, and, Alternatively, Motion for New Trial (Doc. 107). After reviewing the briefing and the applicable law, the Court finds that the District's motion should be granted in part and denied in part.[1]

### I. Background

In September 2016, Texas Southmost College's Board of Trustees held a termination hearing and voted to terminate Dr. Lily F. Tercero, who at the time served as the college's president under a three-year contract. Tercero sued the District and several Board members, individually, advancing claims under 42 U.S.C. § 1983 for violating her procedural and substantive due-process rights and under the Texas Open Meetings Act. Tercero also alleged breach-of-contract claims against only the District.

The Defendants moved for summary judgment as to all of Tercero's causes of action. In June 2018, the Court granted the motion in part, dismissing the substantive due-process claim, the Texas Open Meeting Act claim, all claims against the individual Defendants, and the part of the procedural due-process claim based on allegedly insufficient notice of the termination

---

[1] Plaintiff Lily F. Tercero filed an opposed motion for leave to file a sur-reply to respond to what she claimed were newly raised arguments in the District's Reply brief. (Pl.'s Mot. for Leave to File a Sur-Reply to Tex. Southmost Coll. Dist.'s Reply to Pl.'s Resp. to its Mot. to Dismiss, Renewed Mot. for J. as a Matter of Law, and Alternatively, Mot. for New Trial, Doc. 112). The Court finds that the District in its Reply brief made solely rebuttal arguments to claims in Tercero's Response. The Court denies Tercero's motion, but notes that it has considered the arguments that she sought to file.

hearing.  (Order, Doc. 56)  The Court also found in that Order that the District did not have governmental immunity under Chapter 271 of the Texas Local Government Code because its immunity depended on a fact issue:  whether Tercero was "due or owed" an amount under her contract.  TEX. LOC. GOV'T CODE § 271.153(a)(1).

In November 2018, the case proceeded to a jury trial on Tercero's claims that the District breached her employment agreement and violated her constitutional and contractual due-process rights.  After a four-day trial, the jury returned a verdict for Tercero on all causes of action.  The jury then awarded damages by answering Question 4:  "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Dr. Tercero for her damages, if any, that were proximately caused by the District's wrongful conduct?"  (Jury Instrs., Doc. 75, 12)[2] The question included two subsets.  Question 4(A) asked the jury to award lost earnings and employee benefits under the employment agreement.   In response, the jury awarded $674,878.66.  (*Id.*)   Question 4(B) asked the jury to award damages for "[d]iminished earning capacity, lost career and business opportunities, loss of reputation, humiliation, embarrassment, inconvenience, and mental and emotional anguish and distress."  (*Id.*)  The jury responded with an award of $12,500,000, making the total damages $13,174,878.66.

Both parties moved for attorney's fees.  The Court awarded Tercero $117,685.67 in attorney's fees and entered judgment on that fee award and the jury's verdict.  (Order on Mots. for Attorney's Fees, Doc. 104, 13; Final Judgment, Doc. 105)  The District then filed the present motion, arguing that Tercero's breach-of-contract claims should be dismissed for lack of subject-matter jurisdiction, that the Court should render judgment as a matter of law on all claims, and alternatively, that the Court should grant a new trial or order a remittitur.

---

[2] For all page citations to court documents, the Court cites to the page numbers within the Court's electronic filing system.  These page numbers sometimes differ from that document's internal page numbering.

## II. Standards of Review

### A. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a trial court must dismiss an action for lack of subject-matter jurisdiction when the Court is without the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The party seeking the federal forum bears the burden of proving federal jurisdiction. *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

### B. Rule 50

Judgment as a matter of law is appropriate if a trial court "finds that a reasonable jury would not have a legally sufficient evidentiary basis" to support its verdict. FED. R. CIV. P. 50(a)(1). To determine whether the evidence is legally sufficient, a trial court must "draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party." *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008). The trial court must uphold the jury's verdict unless the evidence "points so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1323 (5th Cir. 1994). That is, "if reasonable persons could differ in their interpretations of the evidence," the trial court should deny the motion. *Thomas v. Tex. Dep't of Crim. Justice*, 220 F.3d 389, 392 (5th Cir. 2000).

### C. Rule 59

Under Rule 59, a trial court may grant a motion for a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). This includes when the trial court finds that the evidence was insufficient, the damages award was excessive, the trial was unfair, or a prejudicial error was committed. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). For a motion challenging the sufficiency of the evidence, "[a] trial court should not grant [the motion] . . . unless the verdict is against the great weight of the evidence." *Dotson v. Clark Equip. Co.*, 805 F.2d 1225, 1227 (5th

Cir. 1986).   For a successful motion based on excessive damages, remittitur is the proper remedy.  *Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir. 2003).

### III.   Analysis

#### A.  Sovereign Immunity for Tercero's Breach-of-Contract Claims

Tercero sued the District for breaching her employment agreement by terminating her without good cause and by denying her the termination procedure that the contract required. The District argues that this Court lacks subject-matter jurisdiction over these state-law claims because the District has sovereign immunity from them.  Tercero responds that the District waived any immunity it enjoyed.

Under the Eleventh Amendment, States have immunity in federal courts from suits by its own citizens and citizens of other States.  *Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011) (citing *Lapides v. Bd. Of Regents*, 535 U.S. 613, 616 (2002)).[3]  This immunity, however, is not absolute.  A State may waive its immunity by voluntarily invoking or unequivocally submitting to federal jurisdiction.  *Id.* (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985)).  This exception to immunity is often called the voluntary-invocation principle.  *See, e.g.*, *Meyer ex rel. Benzing v. Texas*, 410 F.3d 236 (5th Cir. 2005).

Tercero sued the District for breach of contract in federal court.  Under Texas law, a "local government entity . . . that enters into a contract . . . waives its sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract."  TEX. LOC. GOV'T CODE § 271.152.  But the same Texas law also states that this waiver "does not waive sovereign immunity to suit *in federal court*."  *Id.* at § 271.156 (emphasis added).  Although Texas has waived immunity for breach of contract claims in its own courts, it has expressly not waived its Eleventh Amendment immunity for those actions in federal courts.   Applying the straightforward language of this statute, federal courts repeatedly have recognized this retained immunity and dismissed contract claims against various state actors.  *See, e.g., Olford v. City of*

---

[3] Tercero does not dispute the District's status as a state actor.

*Houston*, No. H–17–3421, 2018 WL 3208196, at \*7-8 (S.D. Tex. June 29, 2018) (dismissing contract claim against city); *Smith v. Houston Indep. Sch. Dist.*, 229 F. Supp. 3d 571, 576 (S.D. Tex. 2017) (dismissing contract claim against school district); *Scherff v. S. Tex. Coll.*, No. 7:16-CV-658, 2017 WL 3783042, at \*7 (S.D. Tex. Aug. 29, 2017) (dismissing contract claim against state college); *Nationwide Pub. Ins. Adjusters v. Edcouch–Elsa I.S.D.*, 913 F. Supp. 2d 305, 310-11 (S.D. Tex. 2012) (dismissing contract claim against school district).

Tercero argues that the District waived sovereign immunity by choosing to try this case to a jury and by not raising the defense before entry of judgment.  (Pl.'s Resp. to Tex. Southmost Coll. Dist.'s Mot. to Dismiss, Renewed Mot. for J. as a Matter of Law, and Alternatively, Mot. for New Trial, Doc. 110, ¶ 5 (citing *Neinast v. Texas*, 217 F.3d 275 (5th Cir. 2000) and *Carty v. State Office of Risk Mgmt.*, 733 F.3d 550, 553-54 (5th Cir. 2013)))  But case law is clear that a state actor does not automatically waive its sovereign immunity by defending a case in the forum that a plaintiff chooses; in such a case, the defendant is "involuntarily haled into federal court as a defendant." *Union Pac.*, 662 F.3d at 341.  In the current matter, Tercero, not the District, chose this federal forum.

Tercero's reliance on *Carty* and *Neinast* is unavailing.  In *Carty*, the defendant voluntarily intervened in a lawsuit in federal court, suffered an adverse judgment, and then, on appeal, asserted sovereign immunity.  *Carty*, 733 F.3d at 552-53.  The Fifth Circuit applied the voluntary-invocation principle, holding that voluntarily intervening in a case constituted waiver. *Id.* at 553.  In contrast, in the current lawsuit, the District did not intervene, but was involuntarily haled into federal court.

Tercero also highlights the language in *Neinast* that a state actor "cannot simultaneously proceed past the motion and answer stage to the merits and hold back an immunity defense," and that waiver occurs when the state actor has shown "an intent to defend the suit against it on the merits."  (Resp., Doc. 110, ¶ 5 (quoting *Neinast*, 217 F.3d at 279))  But Tercero's focus on these phrases oversimplifies the issue.  To begin with, the quoted phrases from *Neinast*

represent the Fifth Circuit's explanation of the "common thread" within caselaw outside the Fifth Circuit. *Neinast*, 217 F.3d at 279 (citing cases from the First, Seventh, and Ninth Circuits). And the quoted principles were unnecessary to the decision before the Fifth Circuit, as the district court had granted the State defendant's Rule 12(b)(6) motion at the inception of the case. The defendant had not proceeded to the merits, and the Fifth Circuit concluded that no waiver of sovereign immunity applied. The Court therefore finds that the cited language from *Neinast* does not create a bright-line rule and is probably best viewed as dictum.

Indeed, Tercero's application of *Neinast* would be inconsistent with both Supreme Court precedent and later Fifth Circuit case law. According to the Supreme Court, a state actor can raise an Eleventh Amendment defense for the first time on appeal. *Edelman v. Jordan*, 415 U.S. 651, 678 (1974) (holding that an "Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court").[4] Consistent with *Edelman*, the Fifth Circuit in *Union Pacific*—a more recent case than *Neinast*—allowed the State defendant to raise sovereign immunity for the first time on appeal even though the State defended the case on the merits below. *Union Pac.*, 662 F.3d at 341-42. The Fifth Circuit noted that the State did not chose the federal forum, that one of the issues in the trial court was a federal-law claim over which that court had jurisdiction, and that the circumstances did not evidence gamesmanship. *Id.*

The same is true here. The District did not choose this forum and the parties were also litigating federal-law claims over which this Court has jurisdiction. The Court also finds that the District's delay in raising the defense does not constitute gamesmanship. Given that Tercero also asserted federal claims, the District was unlikely to avoid trial by moving to dismiss the breach-of-contract claims based on sovereign immunity. A trial on the federal claims likely would have involved many if not all the factual issues relevant to the breach-of-contract claims.

---

[4] Although this is the first time the District argues the substance of its sovereign-immunity defense, it did raise the defense in its Amended Answer. (Am. Answer, Doc. 40, ¶ 117) And it has continually asserted governmental immunity in one form or another against Tercero's state-law claims. (*See, e.g.*, Order, Doc. 56, 15-16)

As a result, the Court finds that here, much like in *Union Pacific*, the District's conduct has not "constitute[d] an unequivocal or clear declaration of waiver." *Union Pac.*, 662 F.3d at 341.

Tercero's decision to bring both state and federal claims in federal court effectively granted the District the option to assert its sovereign-immunity defense immediately or to litigate the matter and reserve the defense for later. The Supreme Court has removed this option when the State intervenes in a federal lawsuit or removes the action from state court. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002). The Supreme Court in *Lapides* reasoned that allowing States to invoke the federal forum through removal and then seek dismissal based on sovereign immunity could "permit States to achieve unfair tactical advantages." *Id.* at 621. As a result, a State that affirmatively chooses a federal forum agrees to the federal court's jurisdiction. But when, as here, the plaintiff chooses to sue the State in federal court, neither the Supreme Court nor the Fifth Circuit have held that the State automatically waives its sovereign-immunity defense by waiting until after trial to assert the defense.

Tercero also cites *Wisconsin Department of Corrections v. Schact*, 524 U.S. 381 (1998), to argue that the District's Eleventh Amendment defense is not automatic. (Resp., Doc. 110, ¶ 5) While true, this principle means only that sovereign immunity does not "automatically destroy original jurisdiction." *Wis. Dep't of Corr.*, 524 U.S. at 389. "Unless the State raises the matter, a court can ignore" the defense. *Id.* In contrast, a District Court possesses "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). In the current case, the District raised the defense post-trial, triggering the Court's consideration of the issue.

Because the District has sovereign immunity in this Court to Tercero's state law contract claims, those claims are dismissed for lack of jurisdiction and the jury verdict is vacated on those

causes of action.  Tercero may choose to assert the claims anew in state court.  Whether Texas law precludes such an action is not at issue here.[5]

### B.  Tercero's Constitutional Due-Process Claim

Tercero's procedural due-process claim under the Fourteenth Amendment is based on her assertion that the Board's decision to fire her was predetermined.  That is, the hearing itself was a sham because the Board members were irrevocably closed-minded.  The jury found for Tercero on this claim.  The District moves under Rule 50 to challenge the legal sufficiency of the evidence supporting the jury's verdict and the damages award.  The District also argues that these damages are limited by the contract's damages provision.

### 1.  Sufficiency of the Evidence:  Due-Process Violation

The District argues that Tercero's evidence of a procedural due-process violation is legally insufficient.  (Mot., Doc. 107, 17)  The District claims that courts must presume the Board discharged its duties in good faith and that the evidence at trial did not overcome this presumption to show that the Board members had irrevocably closed minds.  According to the District, the evidence that Tercero offered at trial failed to show that a majority of the Board members were closed-minded.  The District also points out that, before the hearing, the Board was probably aware of the evidence against Tercero and thought this evidence justified terminating her, otherwise the Board would not have recommended termination in the first place.  (*Id.* at 17-18)

A pretermination hearing need not be elaborate to satisfy due process, and need only provide an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1914)); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985).  Consistent with these principles, the jury was instructed that the District "did not have to provide the formality of a full-dress trial," and "could hold an informal hearing which would allow Dr.

---

[5] As the District prevails on its sovereign-immunity defense, the parties' dispute over the sufficiency of the evidence to support the jury verdict and damages award for these claims is moot.

Tercero to give her version of the facts and that gave her the opportunity to be heard at a meaningful time and in a meaningful manner." (Jury Instrs., Doc. 75, 11)   The Court also instructed the jury that "a hearing is not meaningful if the decision makers had already predetermined the outcome." (*Id.*)[6]   Applying these instructions to the evidence, the jury found that the District had not afforded Tercero her procedural due-process rights.

The District is correct that courts presume that adjudicators, such as the Board members here, execute their duties with honesty and integrity.   But that presumption is not dispositive, and a plaintiff can overcome it by showing that these officials had irrevocably closed minds, causing a denial of due process.   *See United States v. Batson*, 782 F.2d 1307, 1313-15 (5th Cir. 1986).   For the Court to overturn the jury's verdict, the Court must conclude that no reasonable jury could have found in Tercero's favor on this issue.   *See Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1323 (5th Cir. 1994).   The Court does not so conclude.

Of the seven Board members present at Tercero's termination hearing, six voted, and four of them voted to terminate.   (Def.'s Ex. 3, Doc. 88-3, 5, 85-86)   Because the Board needed four votes to terminate Tercero, she needed to convince the jury that those four votes were predetermined.   Tercero presented sufficient evidence to support such a finding.   For example, she presented evidence that

- the Board Chair vehemently disliked Tercero, and tension and animosity existed between them, suggesting that the chairperson had made up her mind before the hearing and regardless of the facts;[7]

- Board members took steps before the hearing that signified that they had made up their minds (*see, e.g.,* Tr., Doc. 94, 112 (board member gave a pre-hearing statement

---

[6]   In its Order on the District's summary-judgment motion, the Court found that "[u]nder the circumstances of this case, Tercero's hearing would have been sufficient for purposes of due process if there had not been evidence raising a fact issue that the outcome had been predetermined well in advance." (Order, Doc. 56, 9 n.6)

[7]   About two months before the pre-termination hearing, one of the Board members sent the Chairperson a highly critical memo attacking the Chairperson's "personal and cynical agenda," and highlighting the Chairperson's negative treatment of Tercero.   (Pl.'s Ex. 45, Doc. 84-5)   The Board member found "absurd" that the Chairperson was "aggressively trying to find willful intent of wrong doing on Tercero's part." (*Id.*)   The jury reasonably could have viewed this evidence as showing the Chairperson's predetermined decision about Tercero and her efforts to persuade other Board members to terminate Tercero, even before the hearing.

to media indicting that it was "time to move forward"); Pl.'s Ex. 65, Doc. 86-2 (draft press statements about Tercero's termination, prepared weeks before the pre-termination hearing); Pl.'s Ex. 66, Doc. 86-3 (same));

- a Board member who supported Tercero believed the hearing was "[b]asically going through the motions" (Tr., Doc. 93, 182; *see also id.* at 175 ("[I]t was already decided what was going to happen . . . .")); and

- the interim president took actions before the hearing, such as announcing the search for a new president and clearing out Tercero's office, that suggested that the Board had already decided to terminate her, (Tr., Doc. 94, 112, 290).

In addition, the jury listened to an audio recording of the Board's non-public executive session, where the Board members debated whether to terminate Tercero. (Pl.'s Ex. 63, Doc. 86) Based on this approximately 40-minute recording and the testimony of some Board members who were present at that meeting, the jury could draw its own conclusions about whether the Board members engaged in sincere debate or were open-minded. These credibility determinations are the "purest of jury issues." *Hindman v. City of Paris*, 746 F.2d 1063, 1068 (5th Cir. 1984). The Court, therefore, finds that a reasonable jury could have concluded that at least four of the pro-termination Board members had irrevocably closed minds before the hearing.

In the District's post-judgment briefing, it presents its interpretation of whether the trial evidence showed that the Board members' minds were decided before the hearing. (Mot., Doc. 107, 18-19) But the District's burden was to convince the jury of this interpretation, and the District failed to do so. The District's interpretation of the facts and the conclusions it draws from them are reasonable, but not necessary. Reasonable minds can disagree about whether Tercero's evidence shows that the hearing's outcome was predetermined. The jury, however, was "free to choose among reasonable constructions of the evidence." *EEOC v. Boh Bros. Const. Co. LLC*, 731 F.3d 444, 452 (5th Cir. 2013) (en banc) (quoting *United States v. Ramos-Cardenas*, 524 F.3d 600, 605 (5th Cir. 2008)). Tercero had to prove her preferred construction

by only a preponderance of the evidence, and based on the evidence presented at trial, the Court finds that sufficient evidence supports the jury's verdict on Tercero's procedural due-process claim. *See Thomas v. Tex. Dep't of Crim. Justice*, 220 F.3d 389, 392 (5th Cir. 2000).

### 2.  Sufficiency of the Evidence:  Damages

The District argues that the evidence is insufficient to support the damages awarded for the procedural due-process violation that the jury found.[8]  To begin with, the District argues that any due-process violation did not cause Tercero's claimed injuries.  (Mot., Doc. 107, 22)

A plaintiff can recover actual damages for a procedural due-process deprivation if she can prove that her damages result solely from the deprivation.  *Wilson v. Taylor*, 658 F.2d 1021, 1032 (5th Cir. 1981) (citing *Carey v. Piphus*, 435 U.S. 247, 254 (1978)).  But if the plaintiff would have incurred these damages "even if proper procedures had been used in discharging [her]— *i.e.*, if such injuries were caused not by the pretermination procedural due process violation, but rather were caused by the discharge itself . . .—then [s]he would not be entitled to such damages." *Wilson*, 658 F.2d at 1033.  Based on these principles, the Fifth Circuit has affirmed damages for anxiety and distress when the plaintiff and his wife "testified specifically that the summary proceedings surrounding his dismissal caused severe anxiety and distress, and that these feelings were not relieved until after the full hearing on his discharge."  *Laje v. R. E. Thomason Gen. Hosp.*, 665 F.2d 724, 728 (5th Cir. 1982).[9]  Courts also have noted that proving actual damages stemming solely from a procedural due-process violation can be difficult and should not be presumed.  *See, e.g., Wilson*, 658 F.2d at 1032 ("[W]e too are skeptical that

---

[8] The parties do not dispute that the Board could legally fire Tercero; they dispute only whether the Board had good cause to do so.  If the Board lacked good cause, Tercero was entitled to the remaining value of her contract.  She was not, however, entitled to keep her job.  Whether the Board members had open minds during her termination hearing might go to whether the Board fired her with good cause, but it does not affect whether the Board *could* fire her.  This distinction matters because in wrongful-termination suits, a plaintiff who is deprived of due process at a pretermination hearing might show that, had she been afforded a meaningful opportunity to be heard and to challenge the accusations against her, she could have proved that the proposed discharge was illegal and therefore that she had a right to keep her job.  Such a finding could affect the recoverable damages for the due-process violation.  But that is not the case here.  Tercero presents no evidence and does not argue that, but for the procedural due-process violation, the District would not have fired her.

[9] In *Laje*, the district court instructed the jury that any award of damages "shall be based solely upon the injury to Doctor Laje, if any, caused by the failure to provide him his right to a proper and fair hearing." *Laje*, 665 F.2d at 728. In the current matter, neither party requested such an instruction.

Wilson will be able to prove that deprivation of procedural due process contributed to damage to his career and reputation . . . ."). "[I]n the absence of actual injury, [a plaintiff is] entitled to recover only nominal damages." *Carey*, 435 U.S. at 248.

At trial, Tercero had to show that her alleged damages resulted solely from the due-process violation. The jury awarded her $12,500,000 for "diminished earning capacity, lost career and business opportunities, loss of reputation, humiliation, embarrassment, inconvenience, and mental and emotional anguish and distress." (Jury Instrs., Doc. 75, 12) As support for the jury's award, Tercero points to the trial evidence showing that her damages were caused by "[the District] publicly stating that Dr. Tercero had engaged in deliberate and reckless conduct, including the commission of crimes"; that these "baseless accusations" were a pretext used to terminate her, can be found on a Google search, and will "never go[] away," (Resp., Doc. 110, ¶ 42); that she was embarrassed and humiliated when she found out from reading public notices that she might be fired, when she was escorted to her office to pack her things and leave, and when the Board hired an attorney to investigate her for criminal wrongdoing, (*Id.* at ¶ 44); that these "accusations of criminal wrongdoing were not only embarrassing and humiliating, they also ruined her reputation," (*Id.*); and that she suffered mental and emotional anguish and distress "because she will never be able to pursue the career she loves," (*Id.* at ¶ 46).

This evidence, however, does not meet Tercero's burden. The testimony on which Tercero relies shows that her damages stemmed from several causes, but it does not allow a jury to draw a reasonable inference in Tercero's favor that the due-process violation itself was the cause, or even one of the causes. *See Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 195 (5th Cir. 2006) ("In reviewing the evidence, we draw all reasonable inference in the non-movant's favor . . . ."). The due-process violation centered on the Board members having entered the final hearing with predetermined beliefs about Tercero's termination, thereby failing to provide her an opportunity to be heard in a meaningful time and in a meaningful manner. Tercero never

testified that these procedural deficiencies themselves caused her any damages.  And no other evidence exists to support the jury making such a finding.

Tercero's own argument supports the Court's conclusion.  She argues that the "separate injury" that she suffered for the violation of constitutional due process "was the diminished earning capacity, humiliation, embarrassment, and loss of reputation *that arose from* [the District] publicly stating that Dr. Tercero had engaged in deliberate and reckless conduct, including the commission of crimes."  (Resp., Doc. 110, ¶ 35 (emphasis added))[10]  But these public statements do not represent the procedural due-process violation.  The District could have made these statements and still afforded Tercero a procedurally proper hearing.  As a result, regardless of whether Tercero suffered an injury from these statements, her own arguments show that her injuries stemmed only from factors other than the procedural due-process violation.

In fact, Tercero in her own testimony never links her injuries to the violation of due process.  (Tr., Doc. 92, 303-06)  Tercero testified regarding her belief that the Board members had predetermined their vote before the termination hearing.  (*See, e.g.*, *id.* at 290-291 (testifying that when she saw her office cleaned out before the hearing, she believed "they'd already made a decision before my dismissal hearing")  But she never testified whether or how that *predetermined* decision, rather than the decision itself, harmed her.

In the end, no evidence at trial connected the damages that the jury awarded to the procedural due-process deprivation.  As a result, Tercero cannot recover those damages.  *See Wilson*, 658 F.2d at 1032.  Tercero has, however, prevailed on her claim that the District deprived her of due process, and the Court has found that sufficient evidence supports the jury's verdict on that claim.  As a result, she is entitled to nominal damages on this cause of action. *Carey*, 435 U.S. at 248.

---

[10] In her Response, Tercero makes no other argument that attempts to tie her injuries to the due-process violations.

13 / 25

### 3.  The District's Alternative Arguments[11]

The District also argues that, even if Tercero did present evidence that her damages result solely from the due-process violation, she still cannot recover the awarded damages.  The District makes three main arguments:  (1) that the jury award is an impermissible windfall because the award exceeds the remaining value of her contract; (2) that the employment-damages award is "essentially a species of front-pay," which the Court, not a jury, must award, and is unsupported by any evidence; and (3) that the evidence supporting her mental-anguish damages is legally insufficient.  (Mot., Doc. 107, 20-25)

### a.  Windfall Damages

The District argues that, as the parties contracted for the full quantum of damages that Tercero could recover for being fired without good cause, awarding her more would be a windfall.  (*Id.* at 20-21)  That is, Tercero's due-process claim is based on her property right—her entitlement to the remaining value of her contract—and she cannot recover more than the value of that property right.

As the Court has already noted, a plaintiff can recover actual damages for a due-process violation if she proves that her damages result solely from that violation.  *See Wilson*, 658 F.2d at 1032.  Tercero is not barred from recovering an amount distinct from the contractually owed monies.  The Jury Instructions noted this distinction.  Question 4 asked the jury to award damages, if any, that were proximately caused by the District's wrongful conduct.  (Jury Instrs., Doc. 75, 12)  Question 4(A) focused the jury on the "benefits that would have been due to Dr. Tercero under her Employment Agreement."  (*Id.*)  Question 4(B) asked the jury to award damages for various categories, such as lost career and business opportunities, embarrassment, and emotional anguish.  (*Id.*)  The distinct damages encompassed by Question 4(B) would not stem from the breach of contract.  Thus, the District's argument fails.

---

[11] The Court addresses these arguments to facilitate appellate review, and also because the District has moved for a new trial on these same grounds.  As the Court grants in part the District's renewed motion for judgment as a matter of law, the Court must contingently rule on whether it would grant the motion for new trial were an appellate court to reverse or vacate the Court's judgment.  *See* Fed. R. Civ. P. 50(c)(1).

### b. Employment Damages

The District contends that the "employment damages" are a form of front-pay that the Court and not the jury must award. (Mot., Doc. 107, 25)[12]  In addition, the District argues that such damages are unsupported by any evidence of their value. (*Id.*)

The Court disagrees with the District that the categories of diminished earning capacity and lost career and business opportunities in Question 4(B) of the Jury Charge represent front pay.  Courts award front pay as an equitable remedy in discrimination cases in which reinstatement of the plaintiff is impossible. *See Reneua v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991).  Such an award makes "the plaintiff whole by providing the wages that plaintiff would have received, less any income derived from other employment or unemployment compensation." *Id.*  In this case, Tercero did not seek, as part of her procedural due-process claim, damages for wages that the District should have paid her had it not fired her. Such an award would have duplicated her recovery under Question 4(A) for lost earnings under the Employment Agreement.  Rather, she sought damages for earnings she would have received from other employment—e.g., being hired by another university—but that she could not receive because of the District's wrongful conduct.  In other words, her argument is that the District's conduct worsened her chances of getting another job and her earning potential.  This measure of damages is not front pay.  As a result, this argument fails.

The Court agrees, however, that no evidence supports the jury's award for these categories of damages.  As the Court noted previously, Tercero offered no evidence at trial to connect any of her injuries to the procedural due-process violations.  But putting that finding aside, she also failed to provide the jury with any evidence to enable them to make a finding for diminished earning capacity or lost career and business opportunities.  The only evidence Tercero offered on this subject was her own testimony:

Q. Do you have a -- have you been able to get new job?

---

[12] The District identifies "employment damages" as diminished earning capacity, and lost career and business opportunities.  (Mot., Doc. 107, 20)

A. No, I have not.

Q. Have you tried?

A. I've tried twice.

Q. How has this whole incident impacted your life?

A. Unfortunately, as I stated earlier, it's really impacted my reputation.  The position that I applied for, the first one, I was interviewed, I had -- I was actually one of two finalists.  I think it was because  of my -- my experience and all that I had done and did at [Texas Southmost College] and other places, but questions about Texas Southmost College and the accusations that were made against me came up and the public hearings with students and faculty, they also came up in the interview committee and I have no doubt that they didn't pick me because of what they had read.

(Tr., Doc. 92, 303-04)  These few lines of testimony constitute the entirety of the evidence on the subject.  Tercero offered no evidence identifying why she made only two attempts in two years to seek new employment, what the salaries were for these jobs, or even what the jobs were.  And she offered only her own speculation for why she did not secure the first position, and no reason for failing to succeed in her second attempt.  These brief statements are insufficient to permit a jury to draw a reasonable inference of causation or to provide the jury with any information with which it could calculate the lost values of these opportunities or of her earning capacity.[13]  Such bare testimony does not provide the jury with sufficient evidence on this issue to find in her favor.  *See, e.g.*, *Univ. Computing Co. v. Mgmt. Sci. Am., Inc.*, 810 F.2d 1395, 1402 (5th Cir. 1987) (holding that opinion testimony was insufficient to permit a reasonable inference of causation, as such testimony was "no more than a well-informed guess, and any inference drawn therefrom [would be] merely speculative").[14]

---

[13] Tercero contends in her Response that she presented evidence of her salary and benefits when she was terminated—about $235,000 per year—and that the jury could have multiplied this amount by seven—the number of years until she reached retirement age—to calculate the value of her diminished earning capacity and lost career and business opportunities.  (Resp., Doc. 110, ¶ 40)  But this approach assumes that the District's conduct rendered Tercero completely unemployable for the remainder of her professional career, with an effective earning capacity of zero.  No construction of the evidence makes such a conclusion tenable, much less reasonable.

[14] Moreover, her speculated reason for not getting these jobs is that these employers rejected her after reading the District's accusations against her.  Even if that were true, she did not litigate the truth or falsity of those accusations. Rather, she litigated whether the District's purported reasons for firing her constituted good cause.  The accusations against Tercero might not have constituted good cause or been the real reasons the District terminated her, but they might have been true.  Thus, even if she offered sufficient evidence of these employment damages—and she does not—

### c. Mental-Anguish Damages

The District argues that the evidence of Tercero's mental-anguish damages is legally insufficient.  It claims that her evidence consists entirely of her own uncorroborated testimony that she experienced sleeplessness and possibly depression.  (Mot., Doc. 107, 23)

A plaintiff can recover mental-anguish damages by showing "a 'specific discernable injury to the [plaintiff's] emotional state,' proven with evidence [of] the 'nature and extent' of the harm." *Brady v. Fort Bend Cty.*, 145 F.3d 691, 718 (5th Cir. 1998) (quoting *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 938, 940 (5th Cir. 1996)).  A plaintiff's own testimony can be such evidence and it need not be corroborated, but only if it is "particularized and extensive" enough "that it speaks to the nature, extent, and duration of the claimed emotional harm in a manner that portrays a specific and discernable injury."  *Id.* at 720; *see also Hitt v. Connell*, 301 F.3d 240, 250-51 (5th Cir. 2002).  "Neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a constitutional violation occurred supports an award of compensatory damages."  *Brady*, 145 F.3d at 718 (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996)).  The Fifth Circuit has also made clear that "hurt feelings, anger[,] and frustration are part of life," and as such, cannot support mental-anguish damages. *Id.* (quoting *Patterson*, 90 F.3d at 940).

Three Fifth Circuit decisions show that conclusory and uncorroborated testimony, if not specific, rarely supports an award of damages for mental anguish.  In *Brady*, six plaintiffs offered their own testimony as the sole evidence of their mental anguish.  The first plaintiff testified that he had marital and family problems and spent too much time on the couch because he did not feel like the same person; the second that he was sleepless, lost weight and his appetite, could not mentally accept being fired, and was worried about finding another job at his age; the third that he was nervous, sleepless, and anxious; the fourth that he was "highly upset" and had to see a family physician, and was nervous, sleepless, and stressed; the fifth that he was

---

Tercero does not offer a theory for how the District could be liable for making truthful accusations, and she did not request a jury finding on whether the District made false accusations.

nervous and sleepless and had to move to find a new job; and the sixth that he gained roughly 100 pounds, that he was worried about his job prospects, that this was "the worst thing that ever happened to [him]," and that he was "shocked and devastated." *Id.* As to each plaintiff, the Fifth Circuit concluded that the testimony "hardly qualif[ied] as evidence of demonstrable emotional distress" and that, even when the plaintiffs did "refer to specific manifestations of emotional harm—like nervousness, sleeplessness, or stress—they fail[ed] to elaborate with any detail." *Id.* Such conclusory statements, the Fifth Circuit reasoned, "g[a]ve the finder of fact no adequate basis from which to gauge the 'nature and circumstances of the wrong and its effect on the plaintiff.'" *Id.* (quoting *Carey*, 435 U.S. 263-64). Because of this, the Fifth Circuit held that the testimony could not legally support the plaintiffs' mental-anguish damages. *Id.* at 720.

In *Hitt*, the plaintiff offered only his own testimony to support his damages. "Aside from a few other scattered statements," he testified solely that his discharge "was emotionally trying":

> I was depressed. I was out of work. I was embarrassed because it never should have happened. And it made me very defensive in terms of applying for jobs and having to go through and explain, if it got to that point what had gone on and why I was out looking for work.
>
> I've been around law enforcement in Bexar County for a number of years. And people ask you, hey, what's going on. You know, how come you got fired. It's kind of a blight on your reputation, and it does affect you emotionally.

*Hitt*, 301 F.3d at 251. The Fifth Circuit pointed out that "[t]he record [was] devoid of any corroborating evidence" of the plaintiff's "emotional distress or other elements of nonpecuniary damage," and that he offered "no medical evidence, no testimony from family members or co-workers, [and] no evidence of physical manifestations of distress." *Id.* The Fifth Circuit vacated the award of mental-anguish damages because the testimony was "vague, conclusory, and uncorroborated." *Id.* (quoting *Brady*, 145 F.3d at 720).

And in *Miller v. Raytheon Company*, the plaintiff's claim was based "solely on the testimony of [the plaintiff] and his wife." 716 F.3d 138, 147 (5th Cir. 2013). The Fifth Circuit stated that, though the plaintiff "testified that he suffered chest pain, back pain, [and] sleep

disturbances, he also admitted that he did not take any over-the-counter pain or sleep medications," offered "no expert medical or psychological testimony of the extent of his mental anguish," and did not "seek the assistance of any health[-]care professional or counselor." *Id.* The Fifth Circuit found this testimonial evidence legally insufficient and therefore vacated the mental-anguish damages award.

In contrast, the Fifth Circuit has affirmed an award of mental-anguish damages when the plaintiff presented corroborating evidence, or particularized testimony about the depth of the injury sustained. For example, in *Giles v. General Electric Company*, the plaintiff's testimony was also supported by his co-worker, who testified that he "had trouble sleeping, suffered headaches and marital difficulties, and lost the prestige and social connections associated with his position at [General Electric] and his service as treasurer of the local union." 245 F.3d 474, 488 (5th Cir. 2001). The co-worker also stated that the plaintiff appeared "despondent, depressed, down and absolutely utterly discouraged about not being able to come back to work." *Id.* The Fifth Circuit concluded that the evidence was specific enough to permit an award of mental-anguish damages, but it remitted the award from $300,000 to $100,000. *Id.*

In the instant case, the Court finds that the trial evidence on the issue of mental-anguish damages is substantively indistinguishable from the legally insufficient testimony that the Fifth Circuit considered in *Brady*, *Hitt*, and *Miller*. Tercero offered only her own testimony, included here in its entirety, regarding her mental and emotional injuries:

Q. How has this whole incident impacted your life?

A. Unfortunately, as I stated earlier, it's really impacted my reputation.

* * *

You know, you go onto the Internet now and you find everything and it doesn't go away.

Q. Do you ever Google yourself?

A. I have.

Q.  What comes up?

A.  A lot of negative stuff now.

Q.  How does it make you feel?

A.  Since I was a little kid, all I've ever wanted to do was help, to serve, you know, to -- whatever job I had, I wasn't one for titles, but, whatever job I had, what I wanted to do was serve and make a difference.  And now I don't think I'm going to ever be able to get a job in the field that I love and that's very hurtful.  It's hurt my reputation, it's hurt my career, my profession and it's hurt me personally, emotionally, psychologically.  I've gone through a lot these last two years, I haven't had any income for two years.

Q.  Does it affect your health, your sleeping?

A.  I wasn't sleeping for about a year and a half.  I'm doing better now with time, I guess everything heals with time, but it has been a very difficult road for me.  And I've never -- I've never been political, I've never tried to be hurtful and harmful to anybody, so this is just -- it's just been devastating for me when -- especially when I did so much for this institution.  You know, I brought in $28 million to their savings account, made sure that they got half of the assets that – that had been acquired during the twenty-three-year period.

When they told me when I first started that we only had $27,000 in assets, I was able to bring half of it back to the college.  And all the -- we reduced tuition by 37 percent.  Everything that we did was all positive and for it to end this way and to be accused of these things and to be treated the way I was treated, it was so unprofessional and so unfounded and so – so malicious, hurtful.

Q.  Have you suffered any depression?

A.  I think I did because I wasn't able to sleep and go through, I -- I -- I -- I didn't -- I really didn't talk to anybody, not even family for a long time.

(Tr., Doc. 92, 303-05)

As demonstrated by the testimony, Tercero makes only vague and conclusory claims that the ordeal "hurt [her] personally, emotionally, psychologically."   The only specific manifestations she mentions is of sleeplessness and that she "think[s]" she suffered depression. (Tr., Doc. 92, 305)  She offers no corroborating evidence from friends, family, co-workers, or health-care professionals; does not state whether she sought medical help or took any medication; and fails to elaborate on her sleeplessness or possible depression with any detail. Although corroborating evidence is not necessarily required for mental-anguish damages, her

testimony by itself lacks the detail necessary to give a factfinder an "adequate basis from which to gauge the 'nature and circumstances of the wrong and its effect on the plaintiff,'" and is neither "particularized" nor "extensive." *Brady*, 145 F.3d at 719, 720 (quoting *Carey*, 435 U.S. 263-64). And general hurt feelings and conclusory or noncommittal statements are insufficient. *See Brady*, 145 F.3d at 718. Thus, the Court finds that her testimony cannot support an award for mental-anguish damages.

Tercero argues that case law supports the jury's award of mental-anguish damages, but she does not address *Brady*, *Hitt*, or *Miller*, and the cases she does cite are out-of-circuit and Texas cases, none of which involved mental-anguish damages for a purely procedural due-process violation. *See Sw. Bell Tel. Co. v. Garza*, 58 S.W.3d 214, 234-38 (Tex. App.—Corpus Christi 2001) (retaliation claim for filing a workers' compensation claim); *Fischer v. United Parcel Serv.*, 390 F. App'x 465, 472 (6th Cir. 2010) (retaliation claim for prior racial-discrimination suit and internal complaints); *Rowe v. Hussmann Corp.*, 381 F.3d 775, 783-84 (8th Cir. 2004) (claim of hostile work environment caused by persistent sexual harassment); *Eckmann v. Bd. of Educ. of Hawthorne Sch. Dist. No. 17*, 636 F. Supp. 1214 (N.D. Ill. 1986) (substantive due process claim based on a civil rights violation). The Court finds these cases unauthoritative and, in any event, inapposite.

The Fifth Circuit's decision in *Forsyth v. City of Dallas*, 91 F.3d 769 (5th Cir. 1996), arguably supports Tercero's position, although she does not cite to it within her briefing. In that case, the Fifth Circuit upheld awards of $100,000 and $75,000 to two police officers who offered specific testimony of the harm they suffered from the police department's retaliatory reassignments. The first officer "testified that she suffered depression, weight loss, intestinal troubles, and marital problems, that she had been sent home from work because of her depression, and that she had to consult a psychologist," while the other plaintiff "testified that he suffered depression, sleeplessness, and marital problems." *Id.* at 774. The second plaintiff's testimony resembles Tercero's and supports her argument. But the greater weight of authority

indicates that such general testimony cannot support an award of mental-anguish damages.  In addition, the jury award at issue in *Forsyth* as to the second officer totaled $75,000, not $12,500,000.

Although the District does not specifically challenge the damages awarded for humiliation, embarrassment, or inconvenience, such damages are similarly unsupportable from the trial record.  Based on the Court's reading of *Brady* and its progeny, these injuries are types of emotional injuries that can sometimes support mental-anguish damages.  As a result, the Court finds that the same standard that applies for reviewing mental-anguish damages also applies for them.  These injuries are based on the same evidence as Tercero's damages for mental and emotional anguish and distress.  The same evidence that the Court has found insufficient to sustain damages for mental and emotional anguish also cannot support damages for humiliation, embarrassment, or inconvenience.

For these reasons, the Court finds that, even if Tercero did present evidence that her damages result solely from the due-process violation, she could not recover for her mental, emotional, or employment damages.

### IV.  Attorney's Fees

This Court awarded Tercero attorney's fees as a prevailing party under Chapter 38 of the Texas Civil Practice and Remedies Code and 42 U.S.C. § 1988.  (Order on Mots. for Attorney's Fees, Doc. 104)  Given that the Court has dismissed Tercero's contract claims based on the District's sovereign immunity, she is no longer a prevailing party for those claims under Chapter 38.  As a result, she can no longer recover attorney's fees under that statute.  As for her causes of action based on the constitutional violation, the Court has discretion to award attorney's fees to the prevailing party.  *See* 42 U.S.C. § 1988(b).  Although Tercero prevailed on her constitutional claim, she is entitled solely to nominal damages.  As a result, the Court declines to award her attorney's fees on that cause of action.

### V.  Motion for New Trial

Because the Court has granted in part the District's renewed motion for judgment as a matter of law, it must conditionally rule on the District's motion for a new trial in case this "judgment is later vacated or reversed."  FED. R. CIV. P. 50(c)(1).  The District argues in the alternative that it is entitled to a new trial or remittitur because the $12,500,000 damages award is excessive and lacks evidentiary support.  It claims that the emotional-damages award is far more than those condoned in this circuit, and that neither employment nor emotional damages are supported by sufficient evidence.  (Mot., Doc. 107, 24-25)  That is, the District argues for a new trial or remittitur by challenging both the extent of the award and that any award is warranted.

As previously noted, this Court may grant a motion for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court," FED. R. CIV. P. 59(a)(1)(A), such as when the evidence was insufficient, the damages award was excessive, the trial was unfair, or a prejudicial error was committed, *Transworld Drilling Co.*, 773 F.2d at 613. When the motion is based on insufficient evidence, "[a] trial court should not grant [the motion] . . . unless the verdict is against the great weight of the evidence," *Dotson*, 805 F.2d at 1227, and when it is based on excessive damages, remittitur is the proper remedy.  *Laxton*, 333 F.3d at 586.

The Court agrees that the $12,500,000 award is excessive.  The Court has found that Tercero's evidence did not connect her injuries to the due-process violations.  Even if the requisite causal link existed, the evidence would not support the amount of the jury's award. Tercero suffered no physical injuries, and her testimony about her embarrassment, emotional distress, and sleeplessness is sparse and uncorroborated.  Even viewing all the evidence in the light most favorable to Tercero, the District's wrongful conduct cannot support the jury's award of $12,500,000.

Tercero argues that each category of damages under Question 4(B) could support substantial damages, and that when added together, they reasonably could total $12,500,000. (Resp., Doc. 110, ¶¶ 40-48)   But because the Court has already found that the evidence is insufficient to support any of the damages components, the Court rejects Tercero's argument. In addition, an analysis of the case law that Tercero relies on shows that most of those courts were not considering damages awards similar in magnitude to the award here.  (*See, e.g.*, *id.* at ¶ 45 (citing several cases considering mental anguish awards well below $1,000,000))  And the cases she cites with awards over $1,000,000 include a New York state-court case and one from the Eighth Circuit.  (*See id.* at ¶ 43 (citing *Prozeralik v. Capital Cities Commc'ns, Inc.*, 222 A.D.2d 1020, 1021 (N.Y. App. 4th Dep't 1995) and *Lundell Mfg. Co. v. Am. Broad. Co.*, 98 F.3d 351, 364-66 (8th Cir. 1996)))  The New York case does not elaborate on the evidence supporting the award.  *Prozeralik*, 222 A.D.2d at 1021.  And the Eighth Circuit considered a record with far more evidence than Tercero presented.  *Lundell*, 98 F.3d at 355.  In addition, that case also involved damages for lost profits and reputational harm for a large business, not for an individual, and the award still did not total anywhere near $12,500,000.  *Id.*  These out-of-circuit cases do not support Tercero's position.

Given that the Court finds that the evidence does not support the magnitude of the jury's damages award even assuming the necessary causal link, the Court conditionally grants the District's motion for a new trial on damages only.  The current record, however, does not allow the Court to determine an appropriate remittitur amount, as the Court has found that no evidence exists to support any award.  If the Fifth Circuit found that the trial record contains sufficient evidence to support one or more components of Tercero's $12,500,000 damages award, this Court on remand could consider that specific evidence to determine whether remittitur is appropriate and, if so, the amount.   If Tercero were to reject the proposed remittitur, she would have the option of a new trial on damages.

## VI.  Conclusion

For these reasons, it is:

**ORDERED** that Texas Southmost College District's Motion to Dismiss, Renewed Motion for Judgment as a Matter of Law, and, Alternatively, Motion for New Trial (Doc. 107) is **GRANTED** in part and **DENIED** in part;

**ORDERED** that the jury's verdict against the District for Tercero's contract claims are **VACATED** and those claims are **DISMISSED** without prejudice to refiling in State court;

**ORDERED** that the jury's award of $674,878.66 is **VACATED**;

**ORDERED** that the jury's award of $12,500,000 is reduced to the nominal sum of one dollar;

**ORDERED** that the Court conditionally grants the District's Motion for a New Trial; and

**ORDERED** that all other relief not expressly granted is **DENIED**.

SIGNED this 25th day of July, 2019.

Fernando Rodriguez, Jr.
United States District Judge