IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LILY F. TERCERO, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:16-CV-00282 |
| | § | |
| TEXAS SOUTHMOST COLLEGE | § | |
| DISTRICT, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

---

### PLAINTIFF'S RENEWED MOTION FOR AWARD OF ATTORNEYS' FEES AND BRIEF IN SUPPORT

---

TO THE HONORABLE JUDGE FERNANDO RODRIGUEZ, JR.:

COMES NOW Plaintiff Dr. Lily F. Tercero ("Dr. Tercero"), and pursuant to Federal Rule of Civil Procedure 54(d), as well as applicable law, files her Renewed Motion for Award of Attorney's Fees and Brief in Support (the "Motion"). In support of her Motion, Dr. Tercero respectfully shows the Court as follows:

## INTRODUCTION

1.      Dr. Tercero brought procedural due process and breach of contract claims against Texas Southmost College District ("TSC" or "Defendants") because of the wrongful termination of her employment as TSC's President. Dr. Tercero sought to recover the balance of monies owed to her pursuant to her employment contract and damages for violations of her constitutional right to procedural due process arising from the termination of her employment contract.

2.      At trial, Dr. Tercero argued (1) that TSC owed her the balance of her salary and benefits remaining on her recently-renewed employment contract because TSC terminated her without good cause, and (2) TSC violated her constitutional right to due-process as it pertains to

her termination because the pre-termination hearing was a sham and a pretext for a decision to terminate her (without good cause) which had already been made.

3.      The jury found for Dr. Tercero and concluded that TSC had, in fact, breached Dr. Tercero's employment contract and violated her procedural due process rights.[1] The Court requested briefing on the issue of attorney's fees. [Dkt. 77].  Based on the jury's verdict, and after considering the briefing on attorney's fees, the Court entered a judgment in Tercero's favor that included an award of attorneys' fees through trial in the amount of $117,685.67. [Dkt. 104, p. 11]. The court denied without prejudice Dr. Tercero's request for appellate attorney's fees. [Dkt 104 pp. 11-13].

4.      Following trial, TSC filed post-judgement motions (1) to dismiss the breach-of-contract claims on the basis governmental immunity, (2) to renew its motion for judgment as a matter of law as to the due-process claim and the damages awarded therewith, and (3) for new trial or remittitur of the damages awarded regarding the due-process claim (the "Post Judgment Motions"). [Dkt. 107].

5.      The Court dismissed Dr. Tercero's breach-of-contract claim based on lack of jurisdiction, finding that TSC was entitled to Eleventh Amendment immunity. [Dkt. 115, pp. 7-8]. Additionally, the Court granted TSC's renewed motion for judgment as a matter of law as to the due process damages award, concluding that Dr. Tercero was only entitled to nominal damages because the Court found that the causation evidence as to Dr. Tercero's injuries was insufficient to show that Dr. Tercero's injuries resulted from the due process deprivation. [Dkt. 115, pp. 23-24]. Finally, the Court also granted a new trial or remittitur as to its prior award of attorneys' fees. [Dkt. 115, pp. 23-24].

---

[1] The jury awarded Dr. Tercero $674,878.66 in damages for her breach-of-contract claims and $12,500,000.00 in damages on her due-process claim related to various special and general damages.

6.     Dr. Tercero appealed the Court's post-judgment rulings to the Fifth Circuit Court of Appeals. [Dkt. 116].

7.     The Fifth Circuit Court of Appeals found that TSC was not immune from suit for Dr. Tercero's state-law breach of contract claim and reinstated the jury's verdict thereto. On attorneys' fees, the Fifth Circuit reversed the vacatur of the portion of the attorneys' fees associated with the breach of contract claims and remanded the matter for this Court to determine the amount of attorneys' fees to which Dr. Tercero is entitled. In a status conference held on May 20, 2021 the court suggested that Dr. Tercero should focus her attorneys' fees briefing on two issues: (1) Dr. Tercero's entitlement to recover attorneys' fees on her breach of contract claim and (2) whether Dr. Tercero has a duty to segregate attorneys' fees incurred on the breach of contract claim from those incurred on the due process claim.

8.     As more fully set forth below, Dr. Tercero is entitled to recover attorneys' fees on her breach of contract claim through trial, for the post-trial motions, and for the portion of the appeal dealing with the issue of immunity. Moreover, because the exact same evidence used to support the breach of contract claim was used to support the due process claim, there is no requirement to segregate attorney's fees between those claims (breach of contract and due process) through trial. The breach of contract and due process claims were inextricably intertwined. The exact same evidence was offered in support of each cause of action. Indeed, one of Dr. Tercero's breach of contract claims was for TSC's breach of Dr. Tercero's contractual right to due process. [Dkt. 1, ¶¶ 36-37].

9.     Accordingly, Dr. Tercero is entitled to recover her attorneys' fees through trial, attorney's fees incurred defending the Post-Judgment Motions, attorneys' fees accrued at the Fifth Circuit Court of Appeals (other than those that were related solely to the constitutional due process

claim), attorneys' fees for her current Motion, and any additional attorneys' fees if TSC is to appeal the disposition of this Motion.

## <u>RENEWED MOTION FOR THE AWARD OF ATTORNEYS' FEES</u>

**I.** **Dr. Tercero is Entitled to Recover Her Reasonable Attorneys' Fees Pursuant to Section 38 of the Texas Civil Practice and Remedies Code.**

10.     Section 38.001 of the Texas Civil Practice & Remedies Code is a broad attorneys' fees statute that allows a party to recover reasonable and necessary attorney's fees if their claim is for, among other things, breach of a written contract. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8).

11.     To recover under the statute a party must show: "1) recovery of a valid claim in a suit on an oral or written contract; 2) representation by an attorney; 3) presentment of the claim to the opposing party or a representative of the opposing party; and 4) failure of the opposing party to tender payment of the just amount owed before expiration of thirty days from the day of presentment." *Morgan v. F.D.I.C.*, 37 F.3d 633 (5th Cir. 1994) (quoting *Sikes v. Zuloaga*, 830 S.W.2d 752, 753 (Tex.App.-Austin 1992)); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 38.002.

12.     It is undisputed that Dr. Tercero sought recovery pursuant to a claim for breach of her employment contract—a written contract. To that end, on February 8, 2018, Husch Blackwell, on behalf of Dr. Tercero, made a written demand on for the balance owed to her under the employment contract.[2]  TSC failed and refused to tender payment of the remainder owed to Dr. Tercero under her contract within thirty days of the presentment of the demand.[3]

13.     As the Court knows, after a jury trial, Dr. Tercero prevailed on her breach of contract claim against TSC.  She was represented by the law firm of Husch Blackwell throughout

---

[2] A true and correct copy of the February 8, 2018 Demand Letter is attached as Exhibit "1" to the Affidavit of Richard A. Illmer ("Illmer Affidavit"), a true and correct copy of which is attached hereto as Exhibit "A."
[3] Illmer Affidavit ¶2.

the prosecution of the claim. Specifically, Dr. Tercero asserted that TSC breached her employment contract by depriving her of the procedural rights guaranteed by the contract and terminating her employment ostensibly for good cause when, in fact, good cause did not exist. Dr. Tercero's argument as to a lack of good cause was validated by the jury, which unanimously found that TSC breached her employment contract. Post-trial, the breach of contract claim was dismissed for lack of jurisdiction. However, the Fifth Circuit reversed the dismissal finding that TSC was not entitled to Eleventh Amendment immunity as to the breach of contract claim. *Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291, 301 (5th Cir. 2021).

14.    The foregoing facts establish that Dr. Tercero satisfied the requirements of Texas Civil Practice & Remedies Code Sections 38.001 and 38.002 and is, therefore, entitled to recover reasonable attorneys' fees on her breach of contract claim.

## II.    Dr. Tercero does not have a duty to segregate her attorneys' fees because the breach of contract and constitutional due process claims are inextricably intertwined making segregation impossible.

15.    The Supreme Court of Texas articulates the rule as to the duty to segregate attorneys' fees as follows:

> [I]f any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.

*Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006).

16.    In the instant case, Dr. Tercero does not have a duty to segregate attorney's fees incurred during trial because all of the evidence and legal services required to support Dr. Tercero's breach of contract claim also supported her contractual and constitutional procedural due process

claims against TSC. In other words, the legal services rendered for each claim are so intertwined that segregation is impossible.  As such, there is no duty to segregate.

17.     The crux of Dr. Tercero's breach of contract claim was that TSC did not have good cause to terminate her and that her pre-termination hearing was a sham and a pretext to implement a pre-determined decision to fire her without cause. In fact, one of the bases for Dr. Tercero's breach of contract claim was that TSC breached the contractual due process protections included in her contract. [Dkt. 1, ¶¶ 36-37]. Similarly, Dr. Tercero's constitutional due process claim was also based on the fact that TSC conducted a sham proceeding, relying on faulty evidence and violating procedural rules, denying her due process in an effort to manufacture good cause for her termination when it did not exist.  Indeed, the whole point of the sham proceeding was for TSC to avoid contractual liability for terminating Dr. Tercero without good cause.  Thus, all of the evidence Tercero offered on the constitutional due process claim also supported her breach of contract claim. For example:

- The Board Chair vehemently disliked Tercero, and tension and animosity existed between them, suggesting that the chairperson had made up her mind before the hearing and regardless of the facts;

- Board members took steps before the hearing that signified that they had made up their minds;

- A Board member who supported Tercero believed the hearing was '[b]asically going through the motions'; and

- The interim president took actions before the hearing, such as announcing the search for a new president and clearing out Tercero's office, that suggested that the Board had already decided to terminate her.

[Dkt. 115, pp. 9-10]

18.     Indeed, such evidence, which the Court found supported the constitutional due process claim [Dkt. 115, p. 11], also supports the breach of contract claim—it establishes that Dr. Tercero's termination was pre-determined, and the alleged good cause found at the termination

hearing was merely a pre-text.  In other words, it established that the termination was without cause and the pre-termination hearing was merely a sham by TSC designed to avoid contractual liability.  In short, the exact same evidence Dr. Tercero presented for her due process claims was also offered for, and supported the jury verdict on, the breach of contract claims. Establishing both claims required the same facts, evidence, discovery, and trial presentation.   To the extent that legal services were incurred in pursuit of the breach of contract claim (for which fees are recoverable), identical services, evidence, discovery tools, and hearings, among other things (e.g., *voir dire* of the jury), were necessary to pursue the procedural due process claim (for which fees are not recoverable).  Pursuant to the Texas Supreme Court, "[t]o the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service."  *See Chapa*, 212 S.W.3d at 313.

19.     In *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, the United States District Court for the Southern District of Texas acknowledged that "Texas law . . . recognizes that work on recoverable and unrecoverable claims may be 'so intertwined that they need not be segregated.'" *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, CV 4:09-0422, 2017 WL 6942658, at *15 (S.D. Tex. Sept. 21, 2017) (quoting *Chapa*, 212 S.W.3d at 314).   There, the Court concluded that legal work related to a Texas Insurance Code claim and a breach-of-contract claim was "inextricably intertwined" and could not be segregated for the purposes of attorneys' fees. *Id; see also Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017) (There is no requirement to segregate fees "when the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible") *citing Chapa*, 212 S.W.3d at 313–14.  The Court explained that "[t]he same or substantially overlapping discrete legal services were required and used to

pursue both claims" and determined that any attempt to segregate the work performed between the two claims was futile. *Id.*

20.     Indeed, the Fifth Circuit Court of Appeals recognized that a party is not required to segregate its attorneys' fees where none of the fees are related *solely* to a claim for which fees are unrecoverable. *See generally ATOM Instrument Corp. v. Petroleum Analyzer Co., L.P.*, 969 F.3d 210, 218 (5th Cir. 2020), as revised (Sept. 17, 2020), cert. denied sub nom. *Olstowski v. Petroleum Analyzer Co.*, 20-1273, 2021 WL 1951838 (U.S. May 17, 2021) ("It seems to us that the court was saying that these 'discrete legal services advance[d] both a recoverable and unrecoverable claim,' meaning they did not need to be segregated." (quoting *Chapa*, 212 S.W.3d at 313–14)).

21.     Here, the legal services provided for Dr. Tercero's breach-of-contract and constitutional due-process claims are inextricably intertwined. Dr. Tercero asserted and proved that TSC breached her employment contract by depriving her of her of procedural due process protections required by her contract and by terminating her for good cause when good cause did not exist. Thus, the crux of Dr. Tercero's breach of contract claim is that there was no good cause for her termination and the pre-termination hearing was a sham with a pre-determined outcome.

22.     Accordingly, all, or a substantial portion of, the research, discovery, proof, legal expertise, and legal services incurred in this case advanced the pursuit of both claims. And, the fact that the same services incurred for the breach-of-contract claim (the recoverable claim) were required to advance the due-process claim (the unrecoverable claim) does not require a reduction of attorneys' fees merely because the legal services provided served the dual purpose of developing both claims.

23.     Therefore, Dr. Tercero has no duty to segregate her attorneys' fees incurred through trial, in response to TSC's Post-Judgment Motions, or on appeal, except to the extent that there

were fees incurred in the 5th Circuit that advanced only the violation of due process award.  As set forth below, only 10% of the fees incurred before the 5th Circuit related solely to the constitutional due process issue.

### III.   Dr. Tercero's Reasonable Attorneys' Fees to Date On the Breach of Contract Claim are $241,258.50.

24.     In determining the amount of attorney's fees to be awarded, the Court should consider the following factors: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyers performing the services; and (8) whether the fee is fixed or contingent. *See Arthur Andersen & Co. v. Perry Equip. C*orp., 945 S.W.2d 812, 818-819 (Tex. 1997).

25.     Through the completion of the trial, November 10, 2018, Dr. Tercero incurred $117,685.67[4] in reasonable and necessary attorneys' fees from Husch Blackwell for the prosecution of her claims.  The services provided by Husch Blackwell through November 10, 2018 on this matter include, among other things, legal research on issues that arose in the case, drafting pleadings, responding to motions for summary judgment, conducting discovery, document review, attending depositions and trial.[5]

---

[4] This Court granted, as modified, Dr. Tercero's initial Motion for Award of Attorneys' Fees awarding the amount of $117,685.67, which reflections a deduction of the actual attorneys' fees incurred by one-third. Order on Mot. for Atty's Fees. [Dkt. 104]
[5] *See* Illmer Affidavit, ¶9; see also Husch Blackwell Billing Invoices through Trial, true and correct copies of which are attached, collectively, to the Illmer Affidavit as Exhibit "2."

26.     Since November 10, 2018, Dr. Tercero has incurred additional attorneys' fees filing and responding to the Post-Judgement Motions as well as filing a Motion for Entry of Judgment with Brief in Support and an initial Motion for Attorney's Fees that this Court granted, as modified.[6] In response to TSC's Post-Judgment Motions,[7] Dr. Tercero filed a Response in opposition[8] and a Motion for Leave to File a Sur-Reply to TSC's Post-Judgment Motions.[9] Ultimately the Court vacated the jury verdict as to Dr. Tercero's contract claim, vacated the jury's award therewith, and reduced the jury's award on Dr. Tercero's procedural due process claim to the nominal sum of one dollar.[10]   However, as noted above, the Fifth Circuit Court of Appeals reversed and reinstated the judgment on Dr. Tercero's breach of contract claim.

27.     The reasonable and necessary attorney's fees rendered to Dr. Tercero from Nov. 10, 2018 through November 2019 are $103,143.50.[11] However, consistent with this Court's previous reduction  of the hourly rates being charged, if the attorney's fees are reduced by one-third, the reasonable and necessary attorney's fees incurred post-verdict (November 10, 2018) through the appearance of Don Cruse in Dr. Tercero's appeal (November 20, 2019) are $68,762.37, which is the amount sought by Dr. Tercero for the aforementioned post-trial legal services. Applying the court's 33% reduction to the hourly rates charged by Husch Blackwell in this case, the reasonable and necessary fees in the trial court so far are $186,448.04.

28.     In addition, Dr. Tercero is incurring attorney's fees to prepare this motion, to review and reply to any response TSC may file in opposition to this motion, and to respond to the motion TSC is planning to file challenging the sufficiency of the evidence in support of the verdict on the

---

[6] *See* Illmer Affidavit, ¶4(m); *see also* Doc. 104.
[7] *See* Doc. 107.
[8] *See* Illmer Affidavit, ¶4(n); *see also* Doc. 110.
[9] *See* Illmer Affidavit, ¶4(q); *see also* Doc. 112.
[10] *See* Doc. 115.
[11] Illmer Affidavit, ¶9; *see also* Husch Blackwell Invoices Post-Trial, true and correct copies of which are attached, collectively, to the Illmer Affidavit as Exhibit "3."

breach of contract claim.  To file this motion, review any response by TSC, and reply to same. Dr. Tercero will have incurred an additional $12,500.00 in attorney's fees.[12]

29.     In addition, Dr. Tercero will incur attorney's fees reviewing and responding to TSC's Supplemental Brief in Support of Its Motion to Dismiss the Breach of Contract Claim for Insufficient Evidence. At this time, Dr. Tercero estimates that the reasonable and necessary attorney's fees to respond to TSC's motion will be $15,000.00.[13]

30.     The rates and fees charged by Husch Blackwell are reasonable and consistent with rates charged by comparable firms in Texas.[14]  All of the rates are "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Arthur Andersen*, 945 S.W.2d at 818. Further, Husch Blackwell charged reduced rates for this matter. For example, at the outset of the agreement, Richard Illmer was charging $500 per hour rather than his standard $550 per hour, a ten percent (10%) discount from his rate at that time. When it appeared that the case would take longer to resolve and that Dr. Tercero could not afford the current rate, Mr. Illmer reduced his rate to $395 per hour, a thirty-two (32%) discount from his then standard rate of $580.[15] Husch Blackwell did not charge for travel time and took depositions via video conference in order to reduce costs and to make sure the legal fees were not increased by having a firm located in Dallas handle the matter.

31.     Richard A. Illmer, as partner in charge, supervised the attorneys and paralegals that performed work on the case to enhance efficiency.[16] The attorneys and paralegals who worked on this matter possess the skill requisite to properly perform the legal services rendered in this

---

[12] Illmer Affidavit ¶9.
[13] *Id.*
[14] Illmer Affidavit ¶3.
[15] *Id.*
[16] *Id.*

matter.[17]   In light of the foregoing, and the results obtained, the fees and costs charged in this dispute are reasonable and necessary.[18]

32.      In addition to the claims brought by Dr. Tercero on which she prevailed at trial, Dr. Tercero also brought claims against individual board members that were ultimately disposed of by summary judgment.  The amount of reasonable and necessary attorney's fees requested herein does not include approximately $20,000.00 in fees incurred in responding to the individual defendants Motions to Dismiss and Motions for Summary Judgment.[19]

33.      Following the Court's disposition of the post-trial motions, Dr. Tercero appealed this Court's ruling to the Fifth Circuit Court of Appeals.  To represent her before the Fifth Circuit Court of Appeals, Dr. Tercero retained the Law Office of Don Cruse ("Mr. Cruse").

34.      Mr. Cruse has extensive experience representing clients in Texas appellate matters and has focused on this category of work as he has developed his own private practice since 2007.[20] Prior to entering private practice, Mr. Cruse's experience includes clerking with the Texas Supreme Court, facilitating high-stakes commercial litigation at a New York law firm, and serving in Texas's Office of Solicitor General.[21]

35.      In carrying out legal services in this matter, Mr. Cruse billed a total of 93.36 hours at a rate of rate of $450 per hour—totaling $42,012 in attorney's fees together with $448.70 in actual incurred expenses.[22] However, Mr. Cruse voluntarily adjusted the fees incurred by Dr. Tercero by approximately $12,115.74, or 28.84% of the total fees incurred.[23]   Thus. Mr. Cruse

---

[17] *Id.*
[18] Illmer Affidavit ¶9.
[19] Illmer Affidavit ¶5.
[20] See the Affidavit of Don Cruse, ¶4, a true and correct copy of the Affidavit of Don Cruse (the "Cruse Affidavit") is attached hereto as Exhibit "B."
[21] Cruse Affidavit, ¶3.
[22] Cruse Affidavit, ¶¶5-6; *see also* true and correct copies of Don Cruse's Invoices for this matter, which are attached, collectively, as Exhibit "1" to the Cruse Affidavit.
[23] Cruse Affidavit, ¶6.

billed Dr. Tercero the sum of $29,896.26 for his legal services in connection with the appeal together with the $448.70 in actual expenses.[24]   The rates and fees charged by Mr. Cruse are consistent with the rates customarily charged by comparable firms in Texas in the presentation of an appellate matter.[25]

36.    The services provided by Mr. Cruse on this matter include, among other things, an initial analysis of the case (e.g., review of the trial record), drafting an appellate brief, drafting appellate motions, drafting a reply brief, researching the legal issues of the case, attending and preparing for hearings, and oral argument.[26] In light of the foregoing, and the results obtained, the fees and costs charged in this dispute are reasonable and necessary.

37.    With regard to the appellate fees, no less than 90% of the legal services rendered at the court of appeals advanced both of Dr. Tercero's claims.[27] In short, whether Dr. Tercero would have pursued both claims or solely the breach of contract claim, no less than 90% of the same fees—in the amount of $27,310.46—would have still been reasonable and necessary to pursue the appeal of solely the breach of contract claim. That amount does not take into account the previously reduced $12,115.74 in fees incurred.

38.    As set forth in the Affidavits of Mr. Illmer and Mr. Cruse, the following attorneys' fees are reasonable and necessary for the legal services rendered to Dr. Tercero in this case:

| | | |
|---|---|---|
| a) | Through trial | $117,685.67 |
| b) | Post–Judgment Motions and Responses | $68,762.37 |
| c) | Appeal to Fifth Circuit Court of Appeals to date | $27,310.46 |
| d) | Renewed Motion for Attorney's Fees | $7,500.00 |
| e) | If TS opposes this Renewed Motion for Attorney's Fees | $5,000.00 |
| f) | To Respond to TSC's Supplemental Brief in Support of | |

---

[24] Cruse Affidavit, ¶6.
[25] Cruse Affidavit, ¶8.
[26] Cruse Affidavit, ¶5.
[27] Cruse Affidavit, ¶¶9-10.

|   |   |   |
|---|---|---|
|   | Its Motion to Dismiss the Breach of Contract Claim for Insufficient Evidence | $15,000.00 |
| g) | If TSC Files a Motion for Rehearing or New Trial | $15,000.00 |
| h) | If TSC Files an Appeal to the Fifth Circuit | $45,000.00[28] |

## IV.   Conclusion.

WHEREFORE, PREMISES CONSIDERED, Dr. Tercero respectfully requests that the Court enter an Order granting Dr. Tercero's Renewed Motion for the Award of Attorneys' Fees and Brief in Support, ordering TSC to pay Dr. Tercero reasonable and necessary attorneys' fees as follows:

|   |   |   |
|---|---|---|
| a) | Through trial | $117,685.67 |
| b) | Post–Judgment Motions and Responses | $68,762.37 |
| c) | Appeal to Fifth Circuit Court of Appeals | $27,310.46 |
| d) | Renewed Motion for Attorney's Fees | $7,500.00 |
| e) | If TSC Opposes this Motion | $5,000.00 |
| f) | To Respond to Supplemental Brief in Support of TSC's Motion to Dismiss the Breach of Contract Claim for Insufficient Evidence | $15,000.00 |
| g) | If TSC Files a Motion for Rehearing or New Trial | $15,000.00 |
| h) | If TSC Files an Appeal to the Fifth Circuit | $45,000.00 |

And for such other and further relief to which Dr. Tercero may show herself to be entitled.

---

[28] Cruse Affidavit, ¶12.

Respectfully submitted,

By:     /s/ Richard A. Illmer
        Richard A. Illmer
        State Bar No. 10388350
        Rick.Illmer@huschblackwell.com
        Chalon N. Clark
        State Bar No. 24050045
        Chalon.clark@huschblackwell.com

        **HUSCH BLACKWELL LLP**
        1900 N. Pearl Street, Suite 1800
        Dallas, Texas 75201
        (214) 999-6100
        (214) 999-6170 *facsimile*
        **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of June 2021, a true copy of the foregoing was delivered to all counsel of record through Electronic Service via the Southern District of Texas Electronic Case Filing System (ECF):

TO:     Eduardo G. Garza
        Roman "Dino" Esparza
        **Esparza & Garza, L.L.P.**
        964 E. Los Ebanos Boulevard
        Brownsville, Texas 78520

        /s/ Richard A. Illmer
        Richard A. Illmer